Argued and submitted December 13, 2002, affirmed February 19, 2003

In the Matter of the Compensation of
Maria D. Meza, Claimant.

Maria D. MEZA,
*Petitioner,*

*v.*

BRUCE PACKING CO., INC.,
and Liberty Northwest Insurance Corporation,
*Respondents.*

99-09292; A113613

63 P3d 1193

Donald M. Hooton argued the cause and filed the brief for petitioner.

David O. Wilson argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

KISTLER, J.

Schuman, J., dissenting.

**KISTLER, J.**

The Workers' Compensation Board found that claimant had agreed that, if she lacked good cause for failing to file a timely request for a hearing from insurer's written denial, her claims would be dismissed. Finding no good cause, the board dismissed her claims. Claimant petitions for review, and we affirm.

On September 12, 1997, claimant filed a request for compensation with insurer, alleging that she was having hand, wrist, and back problems. Insurer accepted some claims and denied others. Two claims were processed to closure, and claimant was awarded no permanent partial disability (PPD) compensation. Claimant requested reconsideration of the determination order. The order on reconsideration affirmed that claimant was not entitled to PPD, and an administrative law judge (ALJ) affirmed that order on July 21, 1999.

On July 30, 1999, claimant's attorney requested that insurer accept additional claims for "thoracic, lumbar and sacral disc injuries, including bulges, herniations, radiculopathies, including herniation of T7-8 disc." Sometime before October 6, 1999, claimant obtained new counsel, who "re-asked [*sic*] the insurer to accept specific cervical and thoracic conditions." Insurer did not respond, and, on November 18, 1999, claimant's attorney requested a hearing on insurer's *de facto* denial.

The hearing was rescheduled several times. On March 27, 2000, insurer issued a formal denial reaffirming its acceptance of some claims and denying others. When the denial was issued, claimant was not represented. The denial stated that claimant could seek assistance from the State of Oregon Ombudsman's office. It provided that she must file a request for a hearing on the denial within 60 days. It added that, "[i]f you do not file a request within 60 days, you will lose any right you may have to compensation unless you can show good cause for delay beyond 60 days." Finally, the denial advised claimant of her right to an attorney.

Claimant received the denial on March 29, 2000. Because of claimant's difficulties with English, she asked her

son "who can 'speak English perfectly well' to interpret the denial letter to her." After receiving the letter, claimant spoke with several attorneys but was not successful in obtaining representation. Claimant also showed the letter to her brother, who speaks English. According to claimant, neither her son nor her brother explained the denial letter correctly to her.

During this time, the board notified claimant that a hearing on the *de facto* denial had been set for July 5, 2000. That hearing was postponed and rescheduled for September 12, 2000. Claimant obtained counsel, who advised the board on July 20, 2000, that she should be substituted as the attorney of record for claimant. On September 12, 2000, claimant's new counsel appeared at the hearing on the *de facto* denial and filed a request for a hearing on the March 27, 2000, denial. Claimant's request for a hearing was filed more than 60 but fewer than 180 days after the March 27, 2000, denial.

At the hearing, the ALJ recited his understanding that the parties had agreed to bifurcate the hearing: They would begin with the question whether claimant had good cause for failing to file a timely request for a hearing on the March 27, 2000, denial. If claimant lacked good cause, the entire matter would be dismissed. *See* ORS 656.319(1)(b).[1] If claimant had good cause, then the parties would hold a hearing on the merits of claimant's claims. Claimant did not disagree with the ALJ's recitation of the parties' understanding, and they introduced evidence on the issue of good cause.

In his opinion and order, the ALJ noted that there were two grounds for good cause—claimant's reliance on a

---

[1] That statute provides:

"(1) With respect to objection by a claimant to denial of a claim for compensation under ORS 656.262, a hearing thereon shall not be granted and the claim shall not be enforceable unless:

"(a) A request for hearing is filed not later than the 60th day after the mailing of the denial to the claimant; or

"(b) The request is filed not later than the 180th day after mailing of the denial and the claimant establishes at a hearing that there was good cause for failure to file the request by the 60th day after mailing of the denial."

ORS 656.319(1)(a), (b).

family member to interpret the letter for her and her misunderstanding of the status of the denial. As to the first, the ALJ reasoned that "a worker, who does not speak English, and relies upon a family member to interpret an in-coming denial, does not demonstrate good cause in the event the family member misinterprets or misunderstands the importance and the legal effect of said denial." As to the second, the ALJ explained:

"Claimant's attorney pointed out that a major issue is because of on-going Notices of Hearing, claimant clearly (mis)understood that her hearing would be reset on the same issues which had prevailed at the initial hearing and, therefore, claimant did not need to file another request for hearing, thereby obviating any necessity to call the Ombudsman.

"In regards to claimant's confusion regarding the legal posture of the case, of interest is *Mary [M.] Schultz*, 45 Van Natta 393 [(1993)], in which case that worker thought that her receipt of interim compensation proved that the claim had been accepted and, therefore, no formal request for hearing on the denial needed to be filed.

"Unfortunately for claimant, her totally understandable confusion regarding the status and on-going effect of the March 27, 2000 denial does not demonstrate 'good cause' for failing to timely file a written request for hearing on said denial."

The ALJ concluded that claimant lacked good cause for failing to file within 60 days, and, "[a]s a result, the currently pending request for [a] hearing is a nullity and must be dismissed because of lack of jurisdiction."

Before the board, claimant argued that, even if she did not have good cause for failing to file a request for a hearing on the March 27, 2000, denial, the ALJ erred in saying that he lacked jurisdiction to decide her pending request for a hearing on the *de facto* denial. Claimant reasoned that the board's jurisdiction over her request for a hearing on the *de facto* denial was independent of its jurisdiction over her request for a hearing on the March 27, 2000, denial. Alternatively, claimant argued that, even if the board's jurisdiction depended on whether she had good cause for failing to file a timely request for a hearing on the March 27, 2000,

denial, she was understandably confused about the status of the proceedings.

The board found that, when the parties were before the ALJ, they had agreed that, if claimant did not have good cause for failing to file a request for a hearing on the March 27, 2000, denial, all her claims would be dismissed. The board noted that the ALJ had recited the terms of the parties' agreement and that claimant had not disagreed with the ALJ's recitation. The board reasoned:

> "Having reviewed the 'pre-testimony' discussions, we are persuaded that the parties agreed that litigation of compensability issues was dependent on the outcome of the timeliness issue. Thus, we find that any compensability issues raised by the November 1999 hearing request concerning a 'de facto' denial were subsumed by the subsequent formal written denial of March 27, 2000."

The board then agreed with the "ALJ's reasoning that claimant did not establish 'good cause' for [her] failure to timely request a hearing from [the March 27, 2000] denial" and affirmed the ALJ's order dismissing all of claimant's claims.

■ On review, claimant raises three assignments of error. We begin with the third assignment. Claimant contends that the board erred in finding that she agreed, before the ALJ, that her ability to pursue any of her claims depended upon whether she had good cause for failing to file a timely request for a hearing from the March 27, 2000, denial. She argues that the ALJ and the board drew the wrong inference from the parties' discussion. Specifically, claimant argues:

> "Claimant simply agreed that the insurer had taken the position that the formal written denial deprived the Hearings Division of jurisdiction unless the claimant could establish good cause for the late filing of a written request for hearing from that denial. Claimant never agreed that insurer's position was correct."

(Emphasis omitted.) The board, however, found that claimant did not simply agree that insurer had taken that position. Rather, it found that she had agreed that her claims would be dismissed if she lacked good cause for failing to file a timely request for a hearing from the March 27, 2000, denial. Even

if the board could have drawn either inference from the statements before the ALJ, substantial evidence supports the inference that the board drew.

■    In light of the parties' agreement, the only question that remains is the issue raised by claimant's second assignment of error—whether claimant had good cause for failing to file a timely request for a hearing on the March 27, 2000, denial.[2] On that point, claimant argues that she had good cause either because no request was necessary or because she was understandably confused on that point. Claimant failed to raise the first issue below. Claimant did not argue below that good cause existed because no request for a hearing from the March 27, 2000, denial was necessary. Rather, her good cause argument below, both before the ALJ and the board, assumed that a request for a hearing was necessary but that, in light of the confusing procedural posture of the case, she reasonably misunderstood the need to file the request.[3] Claimant failed to preserve the first basis she asserts on review for saying that she had good cause.

■■    Claimant did argue below, and reasserts on review, that, in light of the pending request for a hearing on the *de facto* denial, she reasonably did not understand that she needed to file a request for a hearing from the March 27, 2000, denial. In *Ogden Aviation v. Lay*, 142 Or App 469, 921 P2d 1321 (1996), we clarified our standard of review in these sorts of cases:

---

[2] In her first assignment of error, claimant argues that her failure to file a timely request for a hearing from the March 27, 2000, denial did not affect the board's jurisdiction to hold a hearing on her earlier request for a hearing on the *de facto* denial. Claimant, however, agreed that all her claims should be dismissed if she lacked good cause for failing to file a timely request for a hearing on the March 27, 2000, denial. In light of her agreement, the only issue that remains is good cause, and we express no opinion on the issue raised in claimant's first assignment of error.

[3] Claimant did not file any written statement of her position at the hearing, and there is no transcript of any opening or closing arguments that she may have made. The only record of what was raised at the hearing comes from the ALJ's opinion and order. Claimant repeated that good cause argument in the brief that she submitted to the board. To be sure, claimant also argued before the board that no request for a hearing was necessary. But she did not raise that issue as a basis for saying that she had good cause for failing to file the request. Rather, she raised that issue as an independent ground as to why the ALJ should not have dismissed her claims.

> "Our review here, thus, is to see whether the agency's determination of 'good cause' is within 'the range of discretion delegated to' the Board by ORS 656.319(1). ORS 183.482(8)(b). The Supreme Court considered the contours of that policy in *Sekermestrovich* [*v. SAIF*, 280 Or 723, 573 P2d 275 (1977)]. It construed 'good cause' as meaning 'mistake, inadvertence, surprise or excusable neglect,' as found in *former* ORS 18.160, 280 Or at 726-27, and held that [the] negligence of an attorney is not good cause unless the attorney's reason for failing to file would be good cause if attributed to the claimant.' "

*Id.* at 476 (footnotes omitted). *Ogden* reaffirmed that the legislature delegated to the board authority to determine, within statutory limits, when a claimant's failure to file a timely request for a hearing constitutes good cause. *See id.* at 476-77. Our inquiry is whether the board's decision that a claimant has or has not established good cause falls within the board's delegated range of authority.

Relying on its opinion in *Mary M. Schultz*, the ALJ concluded, and the board agreed, that claimant's confusion about the status of her case did not constitute the sort of mistake or excusable neglect that would establish good cause. In light of the explicit statement in insurer's March 27, 2000, letter that claimant had to file a request for a hearing from that denial and that, if she did not do so, she could lose any right to compensation that she might have, we cannot say that the board acted outside of its delegated range of authority in finding that claimant lacked good cause.

Affirmed.

**SCHUMAN, J.,** dissenting.

I agree with everything in this opinion except the conclusion. In my opinion, claimant's confusion resulted in major part from insurer's initial nonresponsiveness followed by its written denial, and the confusion amounted to "good cause" for failing to file her request for a hearing on time. The board acted outside its lawful range of discretion in concluding otherwise.